Case 4:21-cr-00525   Document 1   Filed 11/02/21 in TXSD   Page 1 of 15

United States Courts
Southern District of Texas
FILED
*November 02, 2021*
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> § <br> v. § <br> § <br> **ROBERTO ZAMORA,** § <br>    AKA Robert Zamora § <br> § <br> **Defendant** § | Criminal No. **4:21CR525** |

INDICTMENT

THE GRAND JURY CHARGES:

General Allegations

At all times material to this Information, unless otherwise specified:

**Relevant Entities and Individuals**

1. Roberto Zamora ("**ZAMORA**") was the owner of Stone Diagnostic ("STONE"), a Texas corporation, as well as TCBilling (TCB), also a Texas corporation.

2. Unindicted co-conspirator Richard Mathis ("Mathis"), was the CEO of North Runnels Hospital (NORTH RUNNELS), a rural county hospital located in Winters, Texas.

## HEALTH CARE BENEFIT PROGRAMS

3. Blue Cross Blue Shield of Texas (BCBS), Aetna Health, Inc. ("Aetna"), and United Healthcare ("United") (collectively, the "health care benefit programs") are private plans and contracts, affecting commerce, under which medical benefits, items and tests are provided to individuals.

4. Individuals who receive benefits from the health care benefit programs are referred to as "beneficiaries".

5. Health care providers that provide tests to beneficiaries are able to apply for and obtain "provider numbers" from the health care benefit programs. A health care provider who is issued a provider number is able to file claims with the health care benefit programs to obtain reimbursement for goods or tests provided to beneficiaries.

6. Payments under the health care benefit programs are often made directly to a provider of goods or tests, rather than to a beneficiary. This occurs when the provider accepts assignment of the right to payment from the beneficiary. In that case, the provider submits the claim to the health care benefit program for payment, either directly or through a billing company.

7. To obtain payment from insurance carriers like BCBS, Aetna, or United, the provider or the provider's designee was required to submit claims to the

insurance carrier that included, among other things, the following information (1) the provider's unique provider identification number, (2) the patient's name (3) the patient's diagnosis prescribed by a standardized code, (4) a description of tests rendered to the patient using standardized codes, (5) the date and location the tests were provided, and (6) the amount claimed for the payment.

8. BCBS, Aetna, and United and other health care benefit programs relied on NORTH RUNNELS and TCB to submit true and accurate claims.

## COUNT 1

### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. §1349)

9. Paragraphs 1 through 8 of the General Allegations section of this Indictment are re-alleged and incorporated as though fully set forth herein.

10. From in or around September 2017 and continuing through in or around July 2019, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant

**ROBERTO ZAMORA**

did knowingly and willfully combine, conspire, confederate and agree with other persons known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1349, that is, to execute a scheme and artifice to

3

defraud a health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b) namely, BCBS, Aetna, United and other health care programs, to obtain by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items and tests.

## Objects of the Conspiracy

11. It was the object of the conspiracy for the co-conspirators, including **ZAMORA** and Mathis and other co-conspirators to unlawfully enrich themselves and/or others known and unknown by submitting and/or causing to be submitted false and fraudulent claims for medical tests that were not medically necessary, not provided, and/ or billed at a significantly higher rate through a hospital rate instead of a billing it at a doctor's office rate, where the tests were actually performed.  **ZAMORA** and his co-conspirators willfully caused the disclosure of individually identifiable health information to another entity with intent to sell, transfer or use such information for private profit.

Manner and Means of Conspiracy

The manner and means by which **ZAMORA** and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

12. Mathis was the CEO of NORTH RUNNELS HOSPITAL ("NORTH RUNNELS") located at 7821 Highway 153, Winters, Texas. Mathis had authority to cause direct wire transfers from the NORTH RUNNELS bank account.

13. **ZAMORA** operated a medical billing business under the name of **TCB,** which was located at 1449 State Highway 6, Suite 400, Sugar Land, Texas.

14. **ZAMORA** operated a business named **STONE DIAGNOSTICS**, located at 1449 State Highway 6, Suite 400A, Sugar Land, Texas.

15. In or around October 18, 2017, Mathis, on behalf of NORTH RUNNELS, signed a contract with **ZAMORA's** company STONE. The agreement allowed STONE to provide diagnostic tests on the patients of NORTH RUNNELS.

16. In or around October 18, 2017, Mathis on behalf of NORTH RUNNELS, signed a contract with **ZAMORA's** company TCB allowing TCB to provide billing services for NORTH RUNNELS.

17. **ZAMORA** established agreements with doctors, clinics, and other medical service providers in Houston and other areas in exchange for an hourly rental fee for office space. **ZAMORA** would direct his employees to screen patients for diagnostic tests based on a questionnaire form created by **ZAMORA** and provided to the clinics and to be filled out by the patient during their visit with the medical provider. Based on the questionnaire, **ZAMORA,** through his employees, would order various medical tests such as sleep studies, nerve conductions tests, allergy tests, urology tests, and psychological tests, balance tests, and other tests.  The tests ordered were not requested by the patient and often times were not medically necessary, not properly provided or both.

18. After the diagnostic tests were performed, **ZAMORA** would submit the information to NORTH RUNNELS. NORTH RUNNELS would then bill health care benefit programs such as BCBS, Aetna, United and others at a significantly higher hospital rate for those tests instead of using the rate for a doctor's office, where the tests were actually performed.

19. The medical providers that signed agreements with **ZAMORA** were generally not aware NORTH RUNNELS was the billing entity for the tests, and they were generally not aware that the tests were being billed at a significantly higher rate.

20. From in or around October 2017 through in or around July 2019, TCB falsely billed for various diagnostic tests performed at the doctors' offices and clinics in the Houston area under the provider number of NORTH RUNNELS. Various health care benefit programs including BCBS, Aetna, and United paid for these medical tests as if they were performed at NORTH RUNNELS, when in fact they were provided with medical entities that had agreements with **ZAMORA**. This resulted in health care benefit programs paying NORTH RUNNELS a significantly higher reimbursement rate.

21. As a result of these billings, the health care benefit programs deposited payments into NORTH RUNNELS's bank account. Mathis would and did cause the transfer of large portions of the proceeds of the fraud into the accounts of STONE and TCB.

22. From in or around October 2017 through in or around July 2019**, ZAMORA** caused the fraudulent billing of health care benefit programs such as BCBS and other programs for an amount in excess of $56 million dollars for medical tests that were allegedly provided by NORTH RUNNELS but were in fact provided by medical providers that had agreements with **ZAMORA**.

23. From in or around October 2017 through in or around July 2019, NORTH RUNNELS paid **ZAMORA**, through STONE and TCB, approximately $20 million dollars for fraudulent claims billed and paid using NORTH

RUNNELS provider number. The claims submitted were for medical tests often not needed by the patient, not properly provided to the patients and/or paid at a significantly higher rate through NORTH RUNNELS's provider number.

24. STONE received approximately $18 million dollars in transfers from NORTH RUNNELS into STONE's Compass bank accounts numbered xxxxx0944 and xxxxx2904.

25. TCB received approximately $2 million dollars in transfers from NORTH RUNNELS into TCB's Compass bank account number xxxxx3560.

### Overt Acts

1. In furtherance of the conspiracy, and to effect the objects thereof, the defendant, aided and abetted by others unknown, performed and caused to be performed, among others, the overt acts set forth herein, in the Southern District of Texas, and elsewhere,

    a. In or around October 18, 2017, Mathis CEO for NORTH RUNNELS allegedly entered into a contract where **ZAMORA** through STONE would provide diagnostic testing services to NORTH RUNNELS patients. The agreement was signed by Mathis and **ZAMORA.**

    b. In or around October 18, 2017, Mathis, as CEO for NORTH RUNNELS, allegedly entered into a contract where **ZAMORA**

through TCB billed for diagnostic tests using the provider number of NORTH RUNNELS.

c. In or around February and March of 2018, NORTH RUNNELS submitted a bill for patient K.G. NORTH RUNNELS was paid approximately $19,186.33 by BCBS. K.G. had never been to NORTH RUNNELS and if the services had been billed by the provider who in fact performed the tests instead of NORTH RUNNELS, the paid amount would have been approximately $900.90.

d. From in or around October 2017 through July 2019, co-conspirator Mathis caused the transfer of money from NORTH RUNNELS' bank account to the bank accounts of STONE and TCB.

e. In or around August 6, 2018, Mathis caused NORTH RUNNELS to wire transfer $340,668.16 into **ZAMORA'S** account for STONE at Compass Bank account number xxxxx7437. The money was part of the proceeds of the false claims filed for medical tests that were billed by **NORTH RUNNELS** for a higher reimbursement rate.

f. In or around September 14, 2018, **MATHIS** through **NORTH RUNNELS** wire transferred $341,964.50 into STONE's Compass Bank account number xxxxx7437 for medical tests not performed at

9

**NORTH RUNNELS** but were billed by **NORTH RUNNELS** for a higher reimbursement rate.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-5

### False Statements Relating to Health Care Matters
### (Violation of 18 U.S.C. § 1035)

1. Paragraphs 1 through 8 are re-alleged and incorporated by reference as if fully set forth herein.

2. On or about the dates set forth below, in Harris County, in the Southern District of Texas, and elsewhere, the defendant

**ROBERTO ZAMORA**

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, as set forth below, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, and in a matter involving a health care benefit program, specifically BCBS, Aetna, United, and others:

| Count | BCBS Patient | Approximate Date Bill Submitted | Location of Tests | Approximate insurance payment to North Runnels |
|---|---|---|---|---|
| 2 | C.H. | January 10, 2018 | Doctor's office in Houston Texas | BCBS paid $4,406.56 to North Runnels |
| 3 | C.H. | November 13, 2018 | Doctor's office in Houston, Texas | BCBS paid $20,893.70 to North Runnels |
| 4 | M.C. | January 19, 2018<br><br>February 28, 2018 | Patient's home | United Healthcare paid $40,429.85 to North Runnels |
| 5 | L.S. | June 29, 2018 | Patient's home in Houston | United Healthcare paid $48,028.71 to North Runnels |

All in violation of 18 U.S.C. § 1035.

# COUNTS 6-8

## (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity - 18 U.S.C. § 1957)

1.  On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere, the defendant

**ROBERTO ZAMORA**

aided and abetted by others, known and unknown, did knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is health care fraud in violation of Title 18, United States Code, Section 1347, as follows:

| COUNT | DEFENDANT | MONETARY TRANSACTION |
| --- | --- | --- |
| 6 | Roberto Zamora | Wire transfer from NRH to STONE on August 6, 2018, in the amount of $340,668.16 |
| 7 | Roberto Zamora | Wire transfer from NRH to STONE on September 14, 2018, in the amount of $341,964.50 |
| 8 | Roberto Zamora | Wire transfer from NRH to STONE on November 1, 2018, in the amount of $473,378.05 |

In violation of Title 18, United States Code, Section 1957 and 2.

## NOTICE OF FORFEITURE
## 18 U.S.C. § 982(a)(7)

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to the defendant

### ROBERTO ZAMORA

that upon conviction of an offense in violation of Title 18, United States Code, Sections 1349 or 1035, all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses, is subject to forfeiture.

## NOTICE OF FORFEITURE
## 18 U.S.C. § 982(a)(1)

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to the defendant

### ROBERT ZAMORA

that upon conviction of a money laundering offense in violation of Title 18, United States Code, Section 1957, all property, real or personal, involved in money laundering offenses or traceable to such property, is subject to forfeiture.

## Property Subject to Forfeiture

The property subject to forfeiture, includes, but is not limited to, the following property:

(a) 1449 Highway 6, Sugar Land, Texas, titled to ZTowers Holdings, LLC;

(b) 418 West Austin, Fredericksburg, Texas, titled to Z-Towers Real Estate Investments Properties LLC;

(c) 420 West Austin, Fredericksburg, Texas, titled to Z-Towers Real Estate Investments Properties LLC;

(d) the real property on Alexandra Way Circle (Lot Ten (10), Block Two (2)), Richmond, Texas, titled to Roberto Zamora and his wife;

(e) $346,903.51 seized from Allegiance Bank account x4881, held in the name of Roberto Zamora and his wife;

(f) all funds in an investment account at Aegis Capital Corp. account x6486, held in the name of Roberto Zamora; and

(g) $20,536.39 seized from a Certificate of Deposit at Allegiance Bank x5857, held in the name of ZTR Holdings, LLC.

## Money Judgment and Substitute Assets

The United States will seek the imposition of a money judgment against the defendant. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the defendant up to the total value of the property subject to forfeiture.

FOREPERSON

**Original Signature on File**

JENNIFER B. LOWERY
ACTING UNITED STATES ATTORNEY


By: *Tina Ansari*
    TINA ANSARI
    ASSISTANT UNITED STATES ATTORNEY